UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

JESSICA CHANTELE ALCON,                                            Case No. 24-10174-t7

    Debtor.

## **OPINION**

    Before the Court is Debtor's request for a damages award against the City of Farmington, New Mexico, for alleged violations of the automatic stay imposed under 11 U.S.C. § 362(a).[1] After a preliminary hearing, the parties asked the Court to rule based on the documents they submitted in support of their positions. Having reviewed the documents and considered the arguments of the parties at the preliminary hearing, the Court finds that Farmington willfully violated the automatic stay. The Court will award Debtor $2,381 in damages.

A.    Facts.[2]

    The Court finds:[3]

    Debtor filed this chapter 7 case on February 26, 2024. She lives in a rented house in Farmington, New Mexico. Farmington provides electricity to Debtor's house. On the petition date, Farmington held a utility deposit of $240.

---

[1] Unless otherwise indicated, all statutory references are to 11 U.S.C.
[2] As requested by the parties, the Court took judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same). In addition, the Court relied on the documents submitted by the parties, none of which were disputed as inadmissible or inauthentic. Finally, the Court relied on the admissions of the parties contained in Debtor's schedules, Debtor's motion, and Farmington's responses to the motion.
[3] Some of the Court's findings may be in the discussion section of the opinion.

Per the Court's calculations, Debtor's average cost for electric service from March 2023 to June 2024 was about $125/month.[4]

Debtor got a statement, a notice, and two letters from Farmington on or about March 12, 2024:

- A utility statement dated March 12, 2024, for service between February 5, 2024, and March 9, 2024. The statement was for $714.87, which included $555.84 in past due amounts. The statement combined pre-and postpetition charges. The statement due date was March 26, 2024;

- A disconnect notice stating that as of March 12, 2024, payment had not been made. The payment due on receipt of the disconnect notice was $714.87. The disconnect notice also stated:

  > Total Past Due Charges $555.84
  > Disconnection Date March 26, 2024
  > To avoid a $10.00 warning tag fee, the past due amount must be paid 6 working days prior to disconnection date. To avoid service disconnection, payment must be received prior to the disconnection date;

- A letter acknowledging notice of Debtor's bankruptcy case filing and notifying her of a new, postpetition electrical utility account; and

- A letter demanding a $560 deposit to receive postpetition utility service. The letter stated that the deposit would be billed over three months.

On or about March 14, 2024, Farmington sent Debtor another utility statement, with "FINAL BILL" added in bold print. The billed service period was February 5, 2024, to February 27, 2024 (23 days). It included $62.62 for service during the period;[5] $4.07 of gross receipts tax;

---

[4] Using Farmington's current rates for electricity ($0.10465 per kwh and $0.0120 power cost adjustment per kwh), a residential base charge of $13.50, and 6.5% NMGRT (together the "Current Rates"), applied to the Monthly Electric Usage information provided on Debtor's bills.

[5] The average charge per day was $2.72.

a previous balance of $586.06; and a $240 credit for the prepetition utility deposit that was applied. The balance, $394.75, was due on March 28, 2024.

On or about March 19, 2024, Farmington sent another utility statement, with a new account number, for postpetition electrical charges. The statement required Debtor to remit $186.67, one third of the $560 postpetition deposit demanded by Farmington, in addition to $108.62 for electrical usage between February 27 and March 18, 2024 (21 days).[6] The due date was April 2, 2024.

Although Farmington told Debtor that she would be billed for the deposit over three months ($186.67 per month), Farmington actually demanded payment of the deposit in less than two months.[7] This was an unnecessary hardship on Debtor. In addition, Farmington asserts that under its policy, Debtor's postpetition deposit should have been the sum of her two highest bills in the last 12 months. If so, the deposit should have been about $416, not $560.[8]

B.   The Automatic Stay of § 362(a).

Section 362(a) imposes an automatic stay of collection actions against a debtor, effective upon filing a petition for relief. Section 362(a)(6) provides that a bankruptcy petition operates as a stay against "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." § 362(a)(6) is interpreted broadly. *See, e.g., In re Cousins*, 404 B.R. 281, 286 (Bankr. S.D. Ohio 2009) (Congress intended that § 362(a)(6) be interpreted broadly); *In re RW Meridian LLC*, 553 B.R. 807, 811 (Bankr. S.D. Cal. 2016) (same);

---

[6] The average charge per day was $5.17.
[7] For unknown reasons, the postpetition billing cycles for Debtor were about 21 days. Prepetition, all the evidence before the Court (the electric bills, the budget billing option, electric usage, and the March 12, 2024, letter of explanation about the new account deposit) indicates that Farmington's normal billing cycle is monthly.
[8] See the discussion in section D below.

*In re M. Frenville Co., Inc.*, 744 F.2d 332, 334 (3d Cir. 1984) (overruled on other grounds by *In re Grossman's, Inc.*, 607 F.3d 114 (3d Cir. 2010) ("Congress' intent in enacting § 362(a) is clear- it wanted to stop collection efforts for all antecedent debts."); *In re Sullivan*, 367 B.R. 54, 63 (Bankr. N.D.N.Y. 2007) (case law is replete with decisions holding that § 362 is to be broadly construed); *In re Wright,* 328 B.R. 660, 663 (Bankr. E.D.N.Y. 2005) (same).

C.  Farmington Violated the Automatic Stay.

Farmington violated the automatic stay imposed by § 362(a) several times.

1.  The March 12 utility statement. The March 12, 2024, utility statement included charges for prepetition electrical service. The utility statement violated the prohibition against any act to collect a pre-petition debt from the Debtor. § 362(a)(6).

2.  The March 12 disconnect notice. The March 12, 2024, disconnect notice includes charges of $555.84 for prepetition electrical service. The notice threatened loss of electrical service unless the prepetition charges were paid. The disconnect notice violated the prohibition against any act to collect a pre-petition debt from the Debtor. § 362(a)(6).

3.  The March 14 utility statement/final bill. The utility statement and final bill dated March 14, 2024, billed Debtor for prepetition charges that remained unpaid after Farmington applied the prepetition deposit. The bill violated § 362(a)(6).

4.  Farmington's calculation of Debtor's prepetition electrical usage. Farmington split the March 12 bill into pre- and postpetition charges. How it arrived at these figures is unclear. The average electrical usage from February 5, 2024, to April 8, 2024, was 31.05 kwh/day (1956 kwh/63 days). However, the average daily usage for the prepetition portion of the March 12 bill (February 5 to February 27) was calculated to be only 20.55 kwh, while the postpetition portion (February

-4-
Case 24-10174-t7    Doc 31    Filed 08/22/24    Entered 08/22/24 14:45:43 Page 4 of 11

27 to March 9) was calculated to be 51.17 kwh per day.[9] Thus, according to Farmington, Debtor's average daily use of electricity for the 12 days *after* she filed bankruptcy was almost two and a half times her average daily use for the 23 days *before* she filed bankruptcy. That seems unlikely.

The most logical inference is that Farmington's allocation between pre- and postpetition electrical usage was erroneous, causing some of her prepetition debt to be shifted to her new, supposedly postpetition, account. If so, the improper allocation violated § 362(a)(6).

Calculation of Farmington's allocation of electrical usage pre- and postpetition

| Bill date | Period Begins | Meter reading | Period ends | Meter reading | Days in Period | Electricity used | Average kwh per day |
|---|---|---|---|---|---|---|---|
| 3/12/2024 | 2/5 | 12242 | 3/9 | 13308 | 33 | 1066 | 32.30 |
| 3/14/2024 | 2/5 | 12242 | 2/27 | 12694 | 22 | 452 | 20.55 |
| 3/19/2024 | 2/27 | 12694 | 3/18 | 13548 | 20 | 854 | 42.70 |
| 4/10/2024 | 3/18 | 13548 | 4/8 | 14198 | 21 | 650 | 30.95 |

D.  Utility Service and § 366.

Farmington owns the Farmington Electric Utility System, which is the electricity provider for Farmington and the surrounding area. Like most electricity providers, Farmington has a monopoly on electrical utility service in the area it serves.

Section 366 of the Bankruptcy Code attempts to balance debtors' need for postpetition utility service with the utility providers' need to be paid for that service.

> Section 366 of the Bankruptcy Code recognizes the monopoly powers of most utilities who provide services such as electricity, water and gas. Unlike other creditors, who usually may decline to do business with the debtor after bankruptcy provided they do not violate some other provisions of the Code, a public utility is required to continue to provide service to the debtor after a bankruptcy case is commenced. Without section 366, a debtor might well be unable to obtain essential services. 3 Collier on Bankruptcy, ¶ 366.01 (16th ed.).
> Section 366 "strike[s] a balance between the general right of a creditor to refuse to do business with a debtor post-petition and the debtor's need for utility service." *In re Martinez,* 504 B.R. 722, 729 (Bankr. D.P.R. 2014).

---

[9] The electricity used for the period from February 27 to March 9 was identified using the 2/27 meter reading from the March 14 bill and the 3/9 meter reading from the March 12 bill.

*In re Sanchez*, 545 B.R. 55, 58 (Bankr. D.N.M. 2016).

Section 366 provides that, except for requiring adequate assurance for continued service, the "utility may not … discriminate against … debtor solely on the basis … that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due." § 366(a).

Farmington represented that it has a policy of requiring a new deposit for customers who file bankruptcy. Under the policy, the amount of the required deposit is the sum of the debtor's two highest electricity bills in the twelve months before the bankruptcy filing. Farmington created a new account for Debtor after she filed bankruptcy. In one of the March 12 letters, Farmington demanded a $560 deposit from Debtor.

The two highest bills in the 12 months prior to Debtor's petition were for December 2023 (1649 kwh) and January 2024 (1474 kwh).[10] Using the Current Rates, the two highest bills would be about $219 (December 2023) and $197 (January 2024), for a total of about $416. That is $144 less than the $560 deposit Farmington demanded. Similar to the pre- and postpetition allocation of the March 12 electricity bill, the demanded deposit amount is contrary to Farmington's stated policy and appears punitive.

The postpetition deposit was billed in three equal installments of $186.67. The installments were due on April 2, April 24, and May 22, 2024, i.e., in less than two months instead of the three months promised.[11] The deposit amount and payment schedule violate § 366(a) by discriminating against Debtor because she filed for bankruptcy.

---

[10] Debtor's monthly electricity use from March of 2023 to March of 2024 is on the March 12, 2024, utility statement.

[11] Farmington's billing periods for Debtor vary from 20 days to 38 days:

-6-
Case 24-10174-t7    Doc 31    Filed 08/22/24    Entered 08/22/24 14:45:43 Page 6 of 11

E.  The Stay Violations Were Willful.

A willful violation of the automatic stay requires that the creditor have knowledge of the automatic stay and intend the action at issue. *See, e.g., In re Escobedo*, 513 B.R. 605, 612 (Bankr. D.N.M. 2014); *Fleet Mortg. Grp., Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999); *In re Johnson*, 501 F.3d 1163, 1172 (10th Cir. 2007) ("[w]illful" requires knowledge that the stay is in place and an intentional act that violates the stay). There is no requirement that the creditor intend to violate the stay. *Johnson*, 501 F.3d at 1172.

Farmington argues that its stay violations were "an unfortunate oversight due to a new employee taking over and the bankruptcy status being missed." This argument must be overruled. First, there is no evidence in the record about a new employee inadvertently causing Farmington to violate the automatic stay, only an unsupported allegation. Second, the poor handling of Debtor's bankruptcy, as outlined in this opinion, denotes a larger problem than the mistake of an untrained employee. Finally, most courts have held that clerical error is insufficient to render a stay violation not "willful." *See, e.g., Fleet Mortg. Grp., Inc.*, 196 F.3d at 268-69 (an innocent mistake can result in a willful stay violation); *In re Rijos*, 263 B.R. 382, 392 (1st Cir. BAP 2001) ("[T]he 'computer did it' defense is not viable"); *In re Nixon*, 419 B.R. 281, 289 (Bankr. E.D. Pa. 2009) ("most courts that have considered the issue have held that a violation of the automatic stay

---

| Bill date | First day | Last day | Days |
|---|---|---|---|
| 3/12/2024 | 2/5/2024 | 3/9/2024 | 33 |
| 3/14/2024 | 2/5/2024 | 2/27/2024 | 22 |
| 3/19/2024 | 2/27/2024 | 3/18/2024 | 20 |
| 4/10/2024 | 3/18/2024 | 4/8/2024 | 21 |
| 5/8/2024 | 4/8/2024 | 5/3/2024 | 25 |
| 6/14/2024 | 5/3/2024 | 6/10/2024 | 38 |

Most utilities bill monthly. If Farmington's erratic billing periods are the result of Debtor's bankruptcy filing, it could violate §366.

occurring from intentional creditor action following human clerical or computer error is nonetheless a "willful" violation remediable under § 362(k)."); *In re Price,* 42 F.3d 1068, 1070-71 (7th Cir. 1994) (a computer generated notice that "could have been suspended with human intervention" was willful); *Wingard,* 382 B.R. at 902 ("creditors have a clear obligation to adjust their programming and procedures and their instructions to employees to handle complex matters correctly"); *In re Orman,* 2006 WL 4470839, at *3 (Bankr. E.D. Okla.) (collection letters sent by mistake were willful stay violations); *In re Kinsey,* 349 B.R. 48, 51–52 (Bankr. D. Idaho 2006) (having procedures in place does not inoculate a creditor from sanctions if the procedures fail); *In re Lofton,* 385 B.R. 133, 138–41 (Bankr. E.D.N.C. 2008) (clerical error resulted in willful stay violation); *In re Stamps,* 2000 WL 1706897, at *5 (Bankr. N.D. Ill.) (willfulness found based on a clerical error); *In re Hill*, 222 B.R. 119, 123–24 (Bankr. N.D. Ohio 1998) (finding willfulness in case involving clerical error in violating the discharge injunction of § 524(a)(2)); *In re Brown*, 1995 WL 776920, at *2 (Bankr. S.D.) (error in coding computer could result in a willful stay violation).

The Court rules that the alleged mistake of a new employee does not change the willful nature of Farmington's stay violations.

F.  <u>Damages</u>.

> Under § 362(a)(3), a Chapter 13 petition triggers a stay against any act aimed at obtaining possession of property belonging to the debtor's estate. Section 362(k)(1) provides in part that an individual injured "by any willful violation" of the automatic stay "shall recover actual damages, including costs and attorneys' fees."

*In re Johnson*, 501 F.3d 1163, 1169 (10th Cir. 2007).

> "[T]he debtor may recover punitive damages when the defendant acted with actual knowledge that he was violating a federally protected right or with reckless disregard of whether he was doing so." *Diviney v. NationsBank of Tex., N.A. (In re Diviney)*, 225 B.R. 762, 776 (10th Cir. BAP 1998).

*Escobedo*, 513 B.R. at 612.

1. <u>Actual damages</u>. An award of actual damages is mandated by § 362(k)(1) of the Bankruptcy Code. *Escobedo*, 513 B.R. at 612–13. Debtor's actual damages include driving from Farmington to Albuquerque and back, 354 miles. Using the current IRS standard mileage rate of $0.67 per mile, Debtor's actual damages for the trip to court are $237. In addition, Farmington required a postpetition deposit of $560, instead of $416 per its policy. Debtor's actual damage from overpaying her deposit is $144. It is likely that Debtor suffered actual damages beyond these. Debtor was *pro se*, so attorneys' fees are avoided. Debtor will be awarded actual damages for which there is evidence in the record.

2. <u>Punitive damages</u>. Section 362(k) provides that a debtor may be awarded punitive damages in appropriate circumstances. Punitive damages are appropriate:

> "when the defendant acted with actual knowledge that he was violating a federally protected right or with reckless disregard of whether he was doing so." *Diviney v NationsBank of Tex., N.A. (In re Diviney)*, 225 B.R. 762, 776 (10th Cir. BAP 1998). … The Court is also mindful of the Supreme Court's directive that "punitives are aimed not at compensation but principally at retribution and deterring harmful conduct." *Exxon Shipping Co. v Baker*, 554 U.S. 471, 492, 128 S. Ct. 2605, 171 L.Ed.2d 570 (2008).

*Escobido*, 513 B.R. at 612-14; *see also In re Ocasio*, 272 B.R. 815, 825 (1st Cir. BAP 2002) ("[t]he primary purpose of punitive damages awarded for a willful violation of the automatic stay is to cause a change in the creditor's behavior"); *In re Shade*, 261 B.R. 213, 216 (Bankr. C.D. Ill. 2001) (same); *In re Riddick*, 231 B.R. 265, 269 (Bankr. N.D. Ohio 1999) (same).

Farmington received notice of Debtor's bankruptcy filing and knew about the automatic stay. Despite the knowledge, postpetition Farmington sent two bills for a prepetition debt; threatened to shut off electrical service unless Debtor paid a prepetition debt; may have misallocated Debtor's pre- and postpetition debts for electrical service; overcharged Debtor for

her postpetition deposit; and demanded that she pay the deposit in less than two months instead of the promised three months. Together, these acts show a lack of interest in complying with the automatic stay and the Bankruptcy Code. Punitive damages are appropriate to get Farmington's attention and prompt a change in its handling of bankruptcy cases. The Court will award Debtor punitive damages of $2,000.

## Conclusion

Farmington's procedures for dealing with Debtor's bankruptcy filing were inadequate. It should have been a simple matter to discontinue billing for prepetition amounts due; apply any prepetition deposit; allocate fairly between any pre- and postpetition electrical usage; create a new account; and obtain a reasonable postpetition deposit, payable over three months. Farmington fell short in each of these areas, resulting in willful stay violations. The Court will award Debtor $2,381 in actual and punitive damages.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: August 22, 2024

Copies to:

Counsel of record

Jessica Alcon
30 Road 5761
Farmington, NM 87401
Jessicaa.ail.nm@gmail.com

City of Farmington
Jennifer Breakell
City Attorney
800 Municipal Dr.
Farmington, NM 87401
jbreakell@farmingtonnm.gov